Our second case of the morning is 415-0215, People of the State of Illinois v. Randall Clendenny. For the appellant, Mr. Liefers, and for the appellee, Ms. Wyckoff. You may proceed. Thank you, Your Honor. May it please the Court and the Counsel, I was a little befuddled as to how I would begin my argument today. I couldn't decide whether or not I was going to misquote William Shakespeare or accurately quote Gertrude Stein and probably attribute to her phrase that which she didn't mean. But a rose is a rose is a rose. I like Gertrude Stein. I do too, Your Honor. Very good. And I enjoyed that poem in which she used that line. Of course, she used it many times since then, but that's the extent of my knowledge of literature, so I hope you're not going to ask me any questions along that line. But what I mean by that, and what I think she meant by that, was that when all is said and done, a thing is what it is. And that's what we have before the Court today. We have an individual who was sentenced to periodic imprisonment. He was allowed work release. The trial court, as we know from Reyes and other decisions, you have to look at the record before you. They're pretty fact-specific cases, although Ortez didn't spill out a lot of facts. But nonetheless, in the case before us, the sentencing judge, Judge Greenleaf, on five separate occasions referred to my client's sentence as work release. He said it in the context of, and I quote him, it is a combination of probation and periodic imprisonment. Work release is what's known. I think he meant what is known. Later on, with regarding the one-time pass that my client had to enjoy the birth of his child, the sentencing judge says he will not be released until such time from work release. He will not be furloughed until she is actually in the hospital. Regarding the companion DUI case that's not before the Court, because he only received a six-month periodic imprisonment sentence concurrent with that, he said there will be six months of work release. When determining my client's reporting date, which was to be the Monday following the sentencing hearing, Judge Greenleaf says, what I'm thinking at this point, because there is a work release and it's a certain amount of trust that's involved, the first day that he should report for work release, and that will be to the sheriff, and then he goes on. Like I said, a rose is a rose is a rose. Based upon the record in this case, it was clear in my estimation that Judge Greenleaf intended that my client serve a term of work release. His mistake was, is assuming I think, that it could be beyond the 12-month maximum that's provided by statute if the program is comparable to that under Article 13 of the Criminal Code. And our position is that it's comparable in the sense of it's similar to. I think it was Judge Greenleaf's intent that my guy serve work release. I know he was concerned, and you can see that in the transcript of the sentencing hearing, with the fact that my guy continued to support his family. So what he did in the two orders that reference periodic imprisonment, he ordered the defendant to spend each night, whether he worked or not, for the 18-month period of time. He was to spend each day that he wasn't working. So, for example, he worked the pipeline, and if he was working construction and it rained out, he wasn't to go anywhere. He was to stay confined. He was to be released for work purposes only, with the exception of the one-time pass to witness the birth of his child. And even Article 13 under the day and work release statute recognizes that a person can be released to attend to family needs. He was to deliver all of his compensation to the clerk's office, every penny. This is similar to the Article 13 provision that provides that the department essentially can set up an account, or they will set up an account, or an account that they direct, and that the defendant's earnings are to be placed in that account. In this particular case, my client was ordered that basically anything left over after paying the clerk's fee of $37.50 a day for periodic imprisonment, that in fact it was to be given directly to his wife for the support of the family. This is a little different than Article 13, because in Article 13, the excess, if you will, over the expenses of the department are placed wherever the defendant directs it. So this is a little more restrictive than Article 13. He was to go to and from his employment by the most direct route. He was not to enter any building or vehicle other than for work purposes. He couldn't stop at a convenience store. That's exactly right, Your Honor. My estimate is clear that Calhoun County, like many of the small counties that I practice in, don't have a formal work release program. My estimation, and what Mr. Ringhaus and the state's attorney said, that in effect what Judge Greenleaf did in this case was to fashion his own work release program because no formal program existed. Mr. Meaffer, let me ask you this. I'm looking at paragraph D of the sentencing provisions that says basically, however, no person shall be sentenced to a term of periodic imprisonment longer than one year if he is committed to a county correctional institution or facility. They could have ended it right there with a period. They could have. And that would cover your case. And every other case where somebody's sentenced to periodic out of a county jail. But they didn't. They went on and added a qualifier. That's correct, Your Honor. So they say the qualifier is, and in conjunction with that sentence, participates in a county work release program. Now you've just said to us in your argument there is no county work release program in Calhoun County. There is clearly no formally adopted, either by the probation office or the court, or for that matter the county board, to the best of my knowledge, any formal program. But I don't think that necessarily means that those individuals who are sentenced in a small county that doesn't have a formal program can't be sentenced to work release. I think, as the court did in this particular case, I think the court can clearly fashion a work release program. I agree with that. That's not the issue. The issue is, so if the court fashions a sentence that allows a person to go out on work release and it's not served pursuant to a formal county work release program, how does the limitation of 12 months apply to that? Because, as I say, if the legislature meant to apply this limitation to county jail work release programs, they could have ended that sentence with a period right after the work facility. Well, I think that my reading of that particular provision means that, yes, you're sentenced to a county correctional institution, and you're right, they could have stopped right there. But it goes on to say that there has to be a program, and I don't mean that literally, like there literally has to be a formally adopted program, but there has to be a program, if you will, that's comparable to Article 13. Let me ask it this way. When would the 18-month periodic imprisonment on class 3 felony, when you're not sentenced to just stand-alone periodic imprisonment, apply? When would you be able to impose a sentence of 18 months periodic imprisonment on somebody who's sentenced to the county jail? Let me give you a hypothetical. In response to that, if I may. Let's assume there's a case where the court ordered the defendant to serve 18 months periodic imprisonment with service of 90 days confinement. Let's also assume that in that particular case, the court only required, as a part of the 90-day confinement, that the defendant spend so many weekends per month during that period of 18 months, and he could catch up on the end in terms of the total 90 days. In that particular case, there's no question he's sentenced to periodic imprisonment. In the hypothetical I'm presenting to the court, there's no question that it's periodic imprisonment because he's permitted to leave and not even come in during the course of a work week. Assuming that there's no restriction on, in other words, it doesn't require him to be at work, but he just simply doesn't have to come in, then that's a sentence of periodic imprisonment that is not part of a work release program. So I think that there can be, and there are sentences where the trial court in particular clearly indicates, and this was the Reyes case, clearly indicates that it's not to be considered a work release, that he's not to get the benefit of the 12-month limitation as opposed to the 18-month limitation. And Reyes itself was very fact specific because at the end of the appellate court it basically says based upon the facts before us and based upon everything that the trial judge said, which specifically was, in the order at least, that you're not being sentenced to work release. You're not going to be housed with the work release defendants. Apparently they had a separate unit for that. And basically you're to go to jail immediately until there's a bed available. And in that particular case, there's no question about it, the court never intended the defendant to be sentenced to a work release program. But that's not the case here. So your position is any sentence of periodic imprisonment that contains a work release provision is subject to the 12-month limitation? No, I think there has to be, that's where the comparable to Article 13 comes in. I think there has to be some restrictions. There's no question about it. And in this particular case, that's exactly what Judge Greenleaf did in his two orders. I mean, he imposed some rather stringent conditions, if you will, or restrictions. And he, like I said, he sort of fashioned his own when there was no formal program that existed. No, Your Honor, I don't think that every sentence of periodic imprisonment where they're permitted to be released for work purposes is, in fact, a work release within the meaning of this limitation. I think that if the order is fashioned in such, and if the trial court has given an indication that that's his intent, and if the order is fashioned in such where they have restrictions similar to Mr. Clendenny's restrictions in the case of Barr, then I think that that is within the meaning of the statute and subject to the 12-month limitation. That being said, counsel and I were joking before we came in here today. We were wondering whether or not we were going to take 15 or 20 minutes of the court's time. But at this point in time, our position is that the sentence is void. Our position is that this court has the authority to reduce that sentence to 12 months, and that's what Randy Clendenny is asking this court to do. Thank you very much. Ms. Wyckoff, when Gertrude Stein was dying, she said, what is the answer? And nobody answered her, the people around her deathbed. And she said, all right, what's the question? The question here is, what is the difference between these two? Admittedly, I was a literature major in college, but I studied medieval literature, so I'm not quite on the same page as everyone else today. But in terms of work release, as we've been talking about today, I think, as Judge Pope was just asking, I think that one very important aspect of a work release program, which Calhoun County does not have, is that a work release program is going to apply to everybody who's sentenced to work release. It's a program that's already in place. We don't have that in Calhoun County. They don't have a work release program. Well, then maybe the question is, if you are in a county that is not large or populous or has been chosen to have this program and helped with setting it up and it's formalized, can the trial court create a comparable program that it is permitted to call a work release? Your Honor, I think that they could do that, but that's not what happened in this case. Here, the defendant received a specialized probation for which he was eligible and which is statutorily authorized. Your Honor, the Code of Corrections provides that a sentence of periodic imprisonment shall be for a definite term of up to 18 months. He was sentenced to 18 months of periodic imprisonment in this case. Your Honor, the defendant here in his brief even states, the trial court effectively created a program for this defendant and placed him in that program for 18 months. Your Honor, this is exactly why the defendant is not in a formal work release program, because this is a specialized program that was created for this person based on the facts of his case, this life circumstances the court accommodated him in order to make sure that he could be successful while still serving a term of periodic imprisonment for the crime that he committed, which was reckless homicide, a Class III felony. A term of 18 months is statutorily authorized for that crime. Your Honor, while the state believes that the term of 18 months is statutorily authorized just to address defendant's claims briefly, the defendant essentially argues that this kind of disclaimer and the statute applies and that it's a 12-month cap in this case. First, there is no work release program as we've already discussed. And second, even if Your Honor's found that this is a work release program that was created, even though there is no formal one, defendant's program is not comparable to what we have in Article 13. Article 13 is very strict. There's a lot of paperwork. There's a lot of things that need to be communicated amongst many people, the state's attorneys, defense counsel, probation, the court, the sheriff's office, that's just not what we have here. Defendant's situation was really quite flexible while it might seem rigid on himself as he had rules to follow. Of course he did. It's very flexible when you compare that with Article 13. The defendant had a unique situation and the court responded to that with a unique sentence. Your Honor, there was a little discussion about some of the case law. I'd like to briefly mention People v. Ortiz. In that case, the court did say that the 18-month sentence should be reduced to 12 because defendant participated in a work release program. Your Honor, the problem with People v. Ortiz is that all it says is quote, based on the record, we find that this was comparable. But the court gives us no indication whatsoever of what was on the record. There's hardly any facts, if any at all, in People v. Ortiz that are helpful to any of us when we decide whether or not this is a comparable program today. As defendant stated while he was up here, these kinds of cases have to be decided on a very case-by-case analysis. All the cases are different. Your Honor, here... So why did the same district... how about in Rays? Yes, in Rays they gave more information about what the trial court's intent was or what it seemed the intent was based on the sentencing hearing. And Your Honor, in Rays the court said that the sentence imposed was for 18 months of periodic imprisonment with release for work and treatment, but not for participation in the work release program. Your Honor, that's what we have here. While defendant has stated that this is comparable to Article 13 because defendant could leave for work and the defendant was able to leave to see the birth of his child, Article 13 when taken in full context is aimed only at employment. That provision about taking family needs, that's actually set apart in a section about self-employment and maybe part of that self-employment is housekeeping duties and things of that nature. Here a defendant's periodic imprisonment was not just limited to his employment. He was allowed to attend the birth of his child. This was so specialized toward him as an individual and as a person which makes it not comparable to the work and day release program in Article 13. Well, if I was in a work release program in the county that I live in, McLean, would it be possible that probation and the authorities would say, we're going to let you go see the birth of your child? Your Honor, I suppose it would be possible, but under Article 13 there would be a lot of hoops that you have to jump through, a lot of paperwork, a lot of discussions with various parties, with the sheriff, with the trial court, with the state's attorneys, and that's not what we have here. What we have here is the trial court taking into consideration the defendant's specific life circumstances and creating a sentence for that individualized person. Ms. Wyckoff, did you happen to look at any legislative history? Your Honor, I did look at some of the legislative history that was provided by the defendant in his brief and it's still unclear to me. The defendant has asserted that a formal work release program is not a requirement as is stated by some of the legislative history in this case. Your Honor, in my readings of legislative history that the defendant provided, I don't think that's the case. Legislative history doesn't say that if the trial court creates some kind of an order that's specialized in this way that it's somehow part of a work release program. There is no formal program. I'm just wondering what the origination of this provision would have been. Were the sheriffs lobbying against such an extensive period of periodic imprisonment of 18 months because of the burdens it would put on them to run that program? I'm not entirely sure how we quite got here, Your Honor. In terms of what the statute itself says, the statute specifically states that for a Class III felony, 18 months is an acceptable term of periodic imprisonment. That's what the court here sentenced the defendant to based on his particular life circumstances, and that's why, Your Honor, this sentence is not part of a work release program and it's not comparable to Article 13. If Your Honor has any other questions. Can you be more specific about the hoops? Well, there's a lot of paperwork. It's a county work release program and the defendant says, I have a job and I have counseling. My counseling is in the evening. I obtain the counseling myself. This is where I want to go and you already know it's an approved program. What has to be done other than the sheriff be directed to release him from 6 to 8.30 so that he can go to domestic violence counseling across the street? Well, Your Honor, under Article 13 there's time requirements. The sheriff has to be informed about things well in advance. Well, the sheriff would have to be informed about and there would have to be a formal order regarding this fellow. There's got to be a specific time that he gets out that's related to his employment or his counseling so the sheriff has to know on a day-to-day basis. Right, Your Honor. I'm actually glad that you brought that up. That's something I wanted to address. In terms of defendant's own order of periodic imprisonment, a lot of defendant's order is almost kind of honor code based. For example, he's allowed to work overtime hours. This defendant? Yes, this defendant is allowed to work overtime hours and it seems from this order that all he has to do is just get some sort of written something from his employer or a time sheet that says, yeah, I worked overtime today. And that's fine. So if you're on a work release program, they wouldn't let you work overtime to earn more money? Your Honor, I don't know if they would under Article 13 or not, but under Article 13 there's certainly a lot more that has to get done. There has to be advanced warning. You have to have discussions with people well in advance of you doing that. Here, defendant is able to go to work. He has a two hour grace period before he goes to work and after he goes to work because he works construction. It's at various locations. He was required to give the sheriff a schedule of where he's going to be and roughly how far away that is before the week began. But here he could work overtime. His schedule could change and he wasn't going to get punished for that because he had so much flexibility in his specialized order of periodic imprisonment. In addition to that, he was then allowed to attend the birth of his child, which is something that's not envisioned in Article 13 as that's a personal family matter that has nothing to do with work whatsoever. Your Honors, for these reasons, the defendant received a specialized probation for which he was eligible. The statute provides that 18 months of periodic imprisonment is statutorily authorized. Your Honors, for these reasons, the state contends that the defendant's sentence and conviction are thus proper and we ask that you affirm. Thank you. Well, it seems like counsel is conceding that Judge Greenleaf had the authority to create a work release program for Mr. Clendetti and that's exactly what Judge Greenleaf did. Was it specialized? Well, certainly it was specialized. One would not expect that it didn't have certain terms and conditions and restrictions. And it was somewhat flexible, but only flexible in the sense of he didn't have a beginning, he had a fluctuating schedule. But it was still, he had to submit that schedule in advance to the sheriff. If there was overtime, he had to submit additional documentation with regard to the overtime. He was basically to go there and come back. Go there and come back. With regard to the Reyes case, counsel is correct, it's based upon the record. And what did we have in the Reyes case that we don't have here? We had a sentencing judge who made it crystal clear that he did not intend that the defendant get the benefit of the work release program and the limitation. Now, he didn't address the limitation, but he made it crystal clear that he was not being sentenced to work release. He was ordered to immediately go to jail that day of sentencing in the Reyes case. He was ordered to serve it in the general population when the bed became available. The sentencing order itself says he is not being sentenced to work release. So there's no wonder that based upon the facts of that case, the appellate court in the 2nd District, different from Ortiz, but the appellate court in the 2nd District determined that based upon the record, there was no work release. And therefore, he wasn't subject to the 12-month limitation. Counsel speaks about Article 13. And I think one of the justices, one of you asked her with regard to Article 13, and she said, and with regard to being released for the birth of his child. Now, we're talking about, she also mentioned hoops. The record reflects that Mr. Clendenny also petitioned for a furlough over the Christmas holidays. And he had to go through hoops to get that done. He had to have his lawyer prepare it. It had to be served upon the state's attorney's office. And the trial court summarily denied that. But in addition, she said that this provision under Article 13 that allows the court, or allows an individual to be released for, and I'll quote it, attending to family needs, applies in self-employment situations, and that's it. And that's not accurate. Under 5-13-13-2, it specifically states that that is one of the reasons for which someone can be released under Article 13. Under the Periodic Imprisonment Statute, it adopts similar language that you can be released for that purpose. Under Artees, the individual was released for work and treatment purposes. But that didn't destroy the fact that he was placed on work release. Just like Mr. Clendenny was placed on work release. I'm asking that the court determine that that sentence in excess of 12 months is void, and ask that the court reduce it. Thank you very much.